**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

**DEONTE VONDELL SPICER,**

       **Plaintiff,**

**v.**                                 **Civil Action No. 2:17cv122**
                                         **(Judge Bailey)**

**LIEUTENANT RIFFLE,** Special
Housing Unit Lieutenant**; OFFICER
M. BLEDSOE,** Special Housing Unit
Officer**; M. LISTEN,** Special Housing
Unit Officer**; OFFICER K. PEARCE,**
Special Housing Unit Officer**; D.
HARVISCHAK,** Special Housing Unit
Officer**; and C. MEYER,** Nurse/P.A.**,**

       **Defendants.**

**REPORT AND RECOMMENDATION**

**I.  Procedural History**

On September 25, 2017, the Plaintiff initiated this civil rights complaint against the

above-named defendants regarding events that occurred at FCC Hazelton. In addition, the

Plaintiff filed a Motion for Leave to Proceed *in forma pauperis*, together with a Prisoner

Trust Account Report and Consent to Collection.  On September 26, 2017, the Plaintiff was

granted leave to proceed *in forma pauperis,* and on October 10, 2017, he paid the required

initial partial filing fee. On October 13, 2017, former United States Magistrate Judge James

E. Seibert conducted  an initial screening and found that summary dismissal was not

appropriate at that time.   Therefore, the Clerk was directed to issue a sixty (60) day

summons for each defendant.

1

On April 9, 2018, the Defendants filed a Motion to Dismiss or, in the alternative, Motion for Summary Judgment. ECF No. 58. On April 10, 2018, a Roseboro Notice was issued. ECF No. 63.  On July 25, 2018, the Plaintiff filed a response. Accordingly, this matter is now before the undersigned for a Report and Recommendation.

## II.  Issues Presented

### A.  The Complaint

Although the Plaintiff provides no definitive date, his first allegation is that in late 2015 or early 2016, he was put in full body restraints and beaten and tortured by Defendant Riffle for complaining about staff misconduct. The Plaintiff further alleges that to "[his] knowledge his rib cage was fractured. ECF No. 1 at p. 9. As a corollary, the Plaintiff alleges that he was denied medical attention by Defendant Meyer following the beating. In addition, the Plaintiff alleges that on June 24, 2016, he and his cell mate were taken out of their cell in the Special Housing Unit ostensibly so that the Plaintiff could speak to the Special Investigative Agent ("SIA") about staff misconduct. The Plaintiff contends that Defendants Bledsoe, Harvischak, Liston and Pearce then entered his cell and "flushed all records" that he was using as evidence of staff misconduct. Finally, the Plaintiff alleges that Defendant Bledsoe put a razor in his cell in order to have his cell mate, "JR" kill him for going to SIA. The Plaintiff maintains that "JR" told him that Defendant Bledsoe put it in the cell so that he could cut the Plaintiff's throat probably while he was sleeping. Instead, "J.R." swallowed pills and used the razor to cut his own wrists. In addition, although not included in his complaint, the grievances which are attached allege that Defendant Bledsoe called him a

2

rat and a snitch.[1] Finally, in addition to asserting that he denied him medical attention following the alleged beating at the end of 2015, early 2016, the Plaintiff also asserts that Defendant Meyer refused to provide him his "mental Medication." For relief, the Plaintiff seeks both compensatory and punitive damages.

**B.  The Defendant's Answer**

For their answer, the Defendants filed a Motion to Dismiss or, on the alternative, Motion for Summary Judgment.  In support of their motion, the Defendants allege that:

1. The Plaintiff did not exhaust his administrative grievances related to his claim of excessive force against Defendant Riffle or his deliberate indifference claim against Defendant Meyer;

2. Defendant Meyer is a Public Health Service employee and is entitled to absolute immunity;

3. The Plaintiff's Eight Amendment claim against Defendant Riffle should be dismissed because his claim is wholly unsupported.

4. The Plaintiff's claim against Defendant Bledsoe regarding the razor and verbal statements should be dismissed.

5. The Plaintiff cannot establish a constitutional violation with respect to the alleged destruction of his legal materials.

**C. The Plaintiff's Response**

In response to the Defendants' Motion to Dismiss or, for Summary Judgment, the Plaintiff maintains that there is a clear dispute as to each of his allegations, and accordingly, summary judgment is not warranted.

---

[1]Because the Defendants have addressed this allegation, the undersigned has as well.

### III.  Standard of Review

**A.  Motion to Dismiss**

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir.1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)).  In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. Mylan Labs, Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir.1993); see also Martin, 980 F.2d at 952.

The Federal Rules of Civil Procedure "require only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Courts long have cited the "rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [a] claim which would entitle him to relief." Conley, 355 U.S. at 45-46.  In Twombly, the United States Supreme Court noted that a complaint need not assert "detailed factual allegations," but must contain more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Conley, 550 U.S. at 555 (citations omitted).  Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," (Id.  (citations omitted), to one that is "plausible on its face," (Id). at 570, rather than merely "conceivable." (Id). Therefore, in order for a complaint to survive dismissal for failure

4

to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." Bass v. E.I.DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir.2003) (citing Dickson v. Microsoft Corp., 309 F.3d 193, 213 (4th Cir.2002); Iodice v. United States, 289 F.3d 279, 281 (4th Cir.2002)). In so doing, the complaint must meet a "plausibility" standard, instituted by the Supreme Court in Ashcroft v. Iqbal, where it held that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009).  Thus, a well-pleaded complaint must offer more than "a sheer possibility that a defendant has acted unlawfully" in order to meet the plausibility standard and survive dismissal for failure to state a claim. (Id)**.**

Plaintiff is proceeding *pro se* and therefore the Court is required to liberally construe his pleadings. Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520-1 (1972) (per curiam); Erikson v. Pardus, 551 U.S. 89, 94 (2007); Loe v. Armistead, 582 F.2d 1291 (4th Cir. 1978); Gordon v. Leeke, 574 F.2d 1147 (4th Cir. 1978). While *pro se* pleadings are held to a less stringent standard than those drafted by attorneys, Haines, 404 U.S. at 520, even under this less stringent standard, a *pro se* complaint is still subject to dismissal. Id. at 520-21. The mandated liberal construction means only that if the Court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so. Barnett v. Hargett, 174 F.3d 1128 (10th Cir. 1999). However, a court may not construct the plaintiff's legal arguments for her. Small v. Endicott, 998 F.2d 411 (7th Cir. 1993). Nor should a court "conjure up questions never squarely presented." Beaudett v. City of Hampton, 775 F.2d 1274 (4th Cir. 1985).

**B. Summary Judgment**

5

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." In applying the standard for summary judgment, the Court must review all the evidence "in the light most favorable to the nonmoving party." Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The court must avoid weighing the evidence or determining the truth and limit its inquiry solely to a determination of whether genuine issues of triable fact exist. Anderson v. Liberty Lobby, Inc., 477 U.. 242, 248 (1986).

Motions for summary judgment impose a difficult standard on the moving party; for it must be obvious that no rational trier of fact could find for the nonmoving party. Miller v. Federal Deposit Ins. Corp., 906 F.2d 972, 974 (4th Cir. 1990).  However, the "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242-252 (1986).  To withstand such a motion, the nonmoving party must offer evidence from which a "fair-minded jury could return a verdict for the [party]." (Id) "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987).  Such evidence must consist of facts which are material, meaning that they create fair doubt rather than encourage mere speculation.  Anderson, 477 U.S. at 248.  It is well recognized that any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion.  Matsushita Elec. Industrial Co. V. Zenith Radio Corp., 475 U.S. 574, 587-88 1986).

6

## IV.  Analysis

### A. Christopher Meyer

Defendant Meyer is employed by the Federal Bureau of Prisons as a Physicians Assistant at FCI Hazelton. He has held that position since February 28, 2011, the same date he began his employment with the BOP. He has been a Commissioned Officer in the United States Public Health Service ("PHS") since August 3, 2012. ECF No. 62 at p. 2.

Title 42 U.S.C. § 233(a) makes the FTCA the exclusive civil remedy for specified action against members of the PHS. In particular, it protects commissioned officers or employees of the PHS from liability for any "personal injury, including death, resulting from the performance of medical, surgical, dental, or related functions" by requiring that such lawsuits be brought instead against the United States. The United States thus, in effect, insures designated public health officials by standing in their place financially when they are sued for the performance of their medical duties. Cuoco v. Moritsugu, 222 F.3d 99, 109 (2d Cir. 2000). See also, U.S. v. Smith, 499 U.S. 160, 170 n. 11 (1990) (42 U.S.C. § 233 is one of several statutes passed to provide absolute immunity from suit for Government medical personal for alleged malpractice committed within the scope of employment); Carlson v. Green, 446 U.S. 14, 20 (1980) (Congress explicitly provides in 42 U.S.C. § 223(a) that the FTCA is a plaintiff's sole remedy against PHS employees); Apple v. Jewish Hospital and Medical Center, 570 F.Supp. 1320 (E.D.N.Y. 1983) (Motion for dismissal of the action against the defendant doctor, a member of the National Health Corps. granted and the United States substituted as defendant, and case deemed a tort action).

Therefore, pursuant to 42 U.S.C. § 233(a), Congress made proceeding under the

FTCA the sole avenue to seek relief against any PHS employee for injuries resulting from the employee's performance of medical functions within the scope of his or her employment. The Supreme Court confirmed this rule in <u>Hui v. Castaneda</u>, by specifically holding that the immunity provided by 233(a) precludes a <u>Bivens</u> action against individual PHS officers or employees for harms arising out of constitutional violations committed while acting within the scope of their office or employment. <u>Hui</u>, 559 U.S. at 802.

Accordingly, as a commissioned officer of the PHS, Christopher Meyer enjoys absolute immunity from personal liability for all claims arising from the Plaintiff's medical treatment or investigation related to that medical treatment. Hence, he must be dismissed as a defendant in this action.

### B. Exhaustion of Administrative Grievances

Under the Prison Litigation Reform Act (PLRA), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983, or any other federal law, must first exhaust all available administrative remedies.  42 U.S.C. § 1997(e)(a).  Exhaustion as provided in § 1997(e)(a) is mandatory.  <u>Booth v. Churner</u>, 532 U.S. 731, 741 (2001).  A <u>Bivens</u> action, like an action under 42 U.S.C. § 1983, is subject to the exhaustion of administrative remedies.  <u>Porter v. Nussle</u>, 534 U.S. 516, 524 (2002).  The exhaustion of administrative remedies "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes,"[2] and is required even when the relief sought is not available.  <u>Booth</u> at 741.  Because exhaustion is a prerequisite to suit, all available administrative remedies must be exhausted *prior to* filing a complaint in federal court.  <u>See</u>

---

[2] <u>Id.</u>

Porter, 534 U.S. at 524 (citing Booth, 532 U.S. at 741) (emphasis added).

In Woodford v. Ngo, 548 U.S. 81, 84-85 (2006), the United States Supreme Court found that the PLRA's exhaustion requirement serves three main purposes: (1) to "eliminate unwarranted federal court interference with the administration of prisons;" (2) to "afford corrections official time and opportunity to address complaints internally before allowing the initiation of a federal case;" and (2) to "reduce the quantity and improve the quality of prisoner suits." Therefore, the PLRA exhaustion requires full and proper exhaustion." Woodford, at 92-94. Full and proper exhaustion includes meeting all the time and procedural requirements of the prison grievance system. Id. At 101-02.

The Bureau of Prisons has established a three-tier Administrative Remedy Procedure, set forth in Title 28 of the Code of Federal Regulations, for the formal review of complaints filed by inmates relating to the conditions of their confinement. 28 C.F.R. § 542.10, et seq.. Under this system, an inmate must first request an informal resolution by presenting an issue of concern informally to a staff member. 28 U.S.C. § 542.13(a). If the informal resolution fails, or if an inmate is dissatisfied with the informal response, or if there is **no** response, the inmate may then submit a Request for Administrative Remedy, in the form of a formal written complaint, on the proper form (a BP-9), to the Warden of the institution within twenty (20) calendar days of the date of the incident upon which the complaint is based. 28 C.F.R. § 542.14(a). If the inmate's request is denied; if the inmate is dissatisfied with the Warden's response; or if there is no response from the Warden within twenty (20) days, the inmate may file an appeal with the appropriate Regional Office

for the geographic region in which the inmate's institution of confinement is located,[3] using the appropriate form (a BP-10), within twenty (20) calendar days of the Warden's response or the date the response would have been due.[4] 28 C.F.R. §§ 542.18; 542.15(a). If the Regional Office denies relief, the inmate completes the administrative remedy process by appealing the decision to the Office of General Counsel, or the "Central Office," in Washington, D.C., using the appropriate form (a BP-11), within thirty (30) calendar days of the date the Regional Director signed the response. Id. The General Counsel's written response to the inmate's appeal is the final decision of the administrative remedy process, and an inmate is not deemed to have fully exhausted his or her administrative remedies until the request has been filed and acted upon at all the required agency levels. Id.

Within the BOP record-keeping system, each administrative remedy request is assigned a six-digit numerical ID, or case number, as well as an alpha-numeric suffix. For each specific remedy request, the numerical ID, or case number, remains the same, while the alpha-numeric suffix may change, depending upon the progression of the request through the various levels of administrative review. The alpha portion of the suffix indicates the specific level of the administrative review process. Thus, the suffix "F" identifies a remedy request at the institutional (the facility) level, while the letter "R" represents the Regional Office level, and the letter "A" indicates the General Counsel, or the Central Office level. The numeric portion of the suffix indicates the number of times that particular

---

[3]For inmates confined at FCC Hazelton, those appeals are sent to the Mid-Atlantic Regional Director in Annapolis Junction, Maryland.

[4]If the inmate does not receive a response within the time allotted for reply, including extension, the inmate may consider the absence of a response to be a denial at that level. § 542.18.

administrative grievance has been filed at a specific level. For example, "F1," indicates the inmate has filed once at the institutional level. If the inmate is rejected at that level and re-files at the same level, the suffix would be "F2."

The Plaintiff is currently serving a 94-month term of imprisonment that was imposed by the Superior Court of the District of Columbia on April 4, 2008. ECF No. 59-1 at p. 10. He was committed to the custody of the BOP on May 14, 2008. Id. He was designated to FCC Hazelton from September 29, 2015, until July 25, 2016. Id. at 15.

From the time of his designation to the custody of the BOP through April 9, 2018, the Plaintiff had filed 76 administrative remedy submissions. While the Defendants acknowledge that the Plaintiff did exhaust his administrative remedies regarding the alleged destruction of his papers and placement of the razor blade, they raise the affirmative defense that he did not exhaust his claims that Defendant Riffle "beat and tortured" him while he was in restraints or that Defendant Meyer failed to render him necessary medical attention.

A review of the administrative remedies provided by the Plaintiff as well as the administrative remedy generalized retrieval provided by the Defendants, clearly establish that the Plaintiff did not exhaust his administrative grievances with respect to his allegations that Defendant Riffle beat and tortured him.[5] Although the Plaintiff filed a grievance at the facility level on March 30, 2015,complaining of an assault by staff and at the Regional level on September 26, 2015, he never filed an appeal to the central office. ECF No. 59-7 at p. 6, Remedy ID 815619-F1 & 815619-R1.  Likewise, although the Plaintiff filed a grievance

---

[5]Even if the Plaintiff had exhausted his grievance regarding Defendant Meyer, he would remain immune from liability under Bivens because of his status as an officer with the PHS.

at the regional level on September 22, 2015, complaining of assault by staff, the same was rejected, presumably because he did not file at the facility level, and he never filed an appeal to the central office. Id., Remedy ID 836441-R1.

The undersigned recognizes that several courts have found that the mandatory exhaustion requirement may be excused in certain limited circumstances.  See Mitchell v. Horn, 318 F.3d 523, 529 (3d Cir. 2003) (summary dismissal for failure to exhaust not appropriate where prisoner was denied forms necessary to complete administrative exhaustion); Ziemba v. Wezner, 366 F.3d 161 (2d Cir. 2004) (defendant may be estopped from asserting exhaustion as a defense where the defendant's actions render the grievance procedure unavailable); Aceves v. Swanson, 75 Fed.Appx. 295, 296 (5th Cir. 2003) (remedies are effectively unavailable where prison officials refuse to give inmate grievance forms upon request); Miller v. Norris, 247 F.3d 736, 740 (8th Cir. 2001) (a remedy is not available within the meaning of § 1997e(a) when prison officials prevent a prisoner from utilizing such remedy); Dotson v. Allen, 2006 WL 2945967 (S.D.Ga. Oct. 13, 2006) (dismissal for failure to exhaust not appropriate where the plaintiff argues that failure to exhaust was direct result of prison official's failure to provide him with the necessary appeal forms).

The Plaintiff's complaint acknowledges that there is a prisoner grievance procedure at FCC Hazelton, notes that he filed a grievance concerning the facts relating to his complaint in the prisoner grievance procedure, and attached as directed his BP-8 through BP-11. A Plaintiff need not allege nor establish that he has exhausted his administrative grievances. Rather, it is an affirmative defense which has been raised by the Defendants. In responding to the Defendants' motion, the Plaintiff attached the same set of grievances

that were attached to his complaint. That grievance, #867803, deals solely with the destruction of his paperwork and placing a razor blade in his cell. Therefore, it has nothing to do with his alleged excessive force claim.  Moreover, in neither his complaint nor his response to the Defendants' Motion to Dismiss or, for Summary Judgment does the Plaintiff raise even a suggestion that the administrative remedy process was rendered unavailable thus preventing him from exhausting his claim of excessive force. Accordingly, the Plaintiff's claim against Defendant Riffle is due to be dismissed.

### C. Destruction of Papers

The Plaintiff alleges that Defendants Bledsoe, Liston, Harvischak and Pierce entered his cell on the morning of June 24, 2016, and "flushed all the records [he] was using as evidence of staff misconduct." ECF No. 1 at p. 8. As support for his allegation, the Plaintiff attached an affidavit from another inmate, Michael Anthony Thompson which indicates that on "the morning of June 24, 2016, I, Michael Thompson heard by ear Officer Bledsoe state inmate Spicer is a rat/snitch and that his days are numbered. [Minutes] before Spicer was brought back to his cell, I heard the ripping sound of papers, then the flushing of a toilet multiple times." ECF No. 1-2 at p. 2. In addition, the Plaintiff provided the names off sixteen inmates from whom he alleges he had affidavits before they were taken and destroyed. However, he maintains they are still willing to help and testify. ECF No. 1-3 at p. 2.

In response, Defendants Bledsoe, Harvischak, Liston, and Pierce have supplied Declarations which are nearly identical and all of which specifically deny flushing or destroying papers from the Plaintiff's cell on June 24, 2016, or seeing any other SHU staff flushing or destroying his papers. In addition, the Defendants allege that the Plaintiff cannot establish a constitutional violation occurred with respect to the alleged destruction of his

13

legal materials. While indicating their opinion that interference with an inmate's access to the court constitutes a First Amendment violation, they argue that a plaintiff who alleges a denial of access to court claims must show how the interference caused him harm or prejudice with respect to litigation. The Defendants then argue that the Plaintiff's claim fails because he has not articulated in what manner the alleged destruction interfered with his access to the courts. The Defendants then go on to note that his appeal of his criminal conviction was already pending before the Fourth Circuit, and his opening brief was filed timely through counsel. Accordingly, they argue that there does not appear to be any impact on his appeal, and he had no other pending litigation in a federal court at that time.

The undersigned does not dispute that there is no indication that the Plaintiff's appeal was hindered by the alleged destruction of his "record," nor that he did not have any other pending litigation in a federal court at the time. However, construing the complaint liberally, and in a manner favorable to the Plaintiff, it appears that he is alleging that the destruction of his "records regarding staff misconduct" prevented him from pursuing a claim regarding alleged staff misconduct predating the instant complaint.

In 42 U.S.C. § 1983, Congress provided a specific damages remedy for Plaintiffs whose constitutional rights were violated by state officials, but Congress provided no corresponding remedy for constitutional violations by agents of the Federal Government. In 1971, the Supreme Court recognized in <u>Bivens</u> an implied damages action to compensate persons injured by federal officers who violated the Fourth Amendment's prohibition against unreasonable searches and seizures. 403 U.S. 388, 397(1971). The Court acknowledged that the Fourth Amendment does not provide for money damages "in so many words." <u>Id.</u> At 396. The Court noted, however, that Congress had not foreclosed

14

a damages remedy in "explicit" terms and no "specific factors" suggested that the Judiciary should "hesitat[e]" in the face of congressional silence. Id. At 396-97. Accordingly, the Court held that it could authorize a remedy under general principles of federal jurisdiction. See id. At 392.

Over the next nine years, the Court allowed Bivens-type remedies twice more, in a Fifth Amendment gender discrimination case, Davis v. Passerman, 442 U.S. 228 (1979) (an administrative assistant sued a Congressman for firing her because she was a woman), and in an Eighth Amendment cruel and unusual punishments clause case, Carlson v. Green, 446 U.S. 14 (1980) (a prisoner's estate sued federal jailers for failing to treat the prisoner's asthma).

The Plaintiff does not allege a specific constitutional amendment was violated, and the Defendants assertion that a denial of access to the courts violates the First Amendment is misguided in the context of Bivens. The Supreme Court has never recognized a First Amendment Bivens claim. See Reichle v. Howards, 566 U.S. 658 (2012) ("We have never held that Bivens extends to First Amendment claims."). Admittedly, the Court has, on occasion, assumed that a First Amendment Bivens action exists purely for analytical reasons, but it has not actually decided the matter. See Wood v. Moss, 572 US 744, 757 (2014) ("[W]e have several times assumed without deciding that Bivens extends to First Amendment claims. We do so again in this case.") (internal citations omitted)); Ashcroft v. Iqbal, 556 U.S. 662 (2009) (assuming without deciding that a First Amendment free exercise claim is actionable under Bivens).

Instead, construed most favorably to the Plaintiff, this allegation in his Bivens complaint, states an unconstitutional denial of his right of access to the courts through a

15

violation of the Due Process Clause of the Fifth Amendment. However, the United States Constitution "requires no more than reasonable access to the courts." <u>Konigberg v. LeFevre</u>, 267 F.Supp.2d 255, 261 (N.D.N.Y. 2003) (citing <u>Jermosen v. Coughlin</u>, 877 F.Supp. 864, 8871 (S.D.N.Y. 1995)). Moreover, a prisoner asserting a denial of access to courts must satisfy the constitutional standing requirement by alleging an actual injury. <u>Lewis v. Casey</u>, 518 U.S. 343, 349 (1996). To meet this requirement, a plaintiff must show that the actions of the prison officials hindered the prisoner's efforts to pursue a nonfrivolous claim." <u>Lewis</u> 518 U.S. at 354. The right of access to the courts "does not guarantee inmates, the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims," and thus the right is limited to safeguarding prisoners' ability "to attack their sentence, either directly or collaterally, and in order to challenge the conditions of their confinement." <u>Id.</u> At 355.

In the instant case, the Plaintiff fails to set forth any facts whatsoever indicating that any of his litigation efforts were thwarted due to the confiscation/destruction of his legal property. More importantly, even if the Plaintiff had alleged facts establishing that his litigating efforts had been frustrated by the Defendants with respect the conditions of his confinement, there are no allegations which actions he was pursuing, or that he suffered any actual injury. Therefore, to the extent that he attempts to set forth an access to the courts claim, it is subject to dismissal.

**D. Snitch Label**

The Plaintiff alleges that on June 24, 2016, Defendant Bledsoe called him "a rat, snitch and stated that [his] days are numbered." ECF No. 1 at p. 8. The Plaintiff has also tendered an affidavit from a fellow prisoner verifying that allegation. ECF No. 1-2 at p. 2.

16

Defendant Bledsoe has submitted a declaration denying the allegation. ECF No. 59-2 at p. 3. Accordingly, there is a genuine issue as to a material fact.

"[P]rison officials have a duty...to protect prisoners from violence at the hands of other prisoners." Farmer v. Brennan, 511 U.S. 825, 833 (1994) (quotation marks and citation omitted). A prisoner who alleges deliberate indifference under the Eighth Amendment arising from failure to protect must satisfy two requirement, an objective component and a subjective component. "First, the deprivation alleged must be, objectively, sufficiently serious," (objective component) and second, "the prison official must have a sufficiently culpable state of mind: (subjective component). Id. at 834 (quotation marks and citation omitted). To satisfy the objective component, a prisoner must establish an "extreme deprivation," De'Lonta v. Angelone, 330 F.3d 630, 634 (4th Cir. 2003), which requires the prisoner to "allege a serious or significant physical or emotional injury resulting from the challenged conditions **or demonstrate a substantial risk of** such serious harm resulting from the prisoner's exposure to the challenged conditions." Odom v. S. Carolina Dept. Of Corrections, 349 F.3d 765, 770 (4th Cir. 2003) (emphasis added). To establish the subjective component, a prisoner must show that the prison official acted with "deliberate indifference," which entails "something more than mere negligence," but "is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." Farmer, 511 U.S. at 834-35. Deliberate indifference "requires that a prison official actually know of and disregard an objectively serious condition, medical need, or **risk of harm**." De'Lanta, 330 F.3d at 634 (emphasis added).

The Fourth Circuit has observed, "[i]t is impossible to minimize the possible

17

consequences to a prisoner of being labeled a 'snitch,'" <u>Miller v. Leathers</u>, 913 F.2d 1085, 1088 n.1 (4th Cir. 1990)). A review of analogous cases reveals that an inmate states a cognizable claim under the Eighth Amendment when he alleges or shows that a prison official has identified him as a snitch to other prisoners. <u>See</u>, <u>e.g.</u>, <u>Irving v. Dormire</u>, 519 F.3d 441, 451 (8th Cir. 2008); <u>Benefield v. McDowall</u>, 241 F.3d 1267 (10th Cir. 2001); <u>Valandingham v. Bojorquez</u>, 866 F.2d 1135, 1138-39 (9th Cir. 1989); <u>Harm v. Berry</u>, 728 F.2d 1407, 15409 (11th Cir. 1984); <u>White v. Fox</u>, 470 Fed. Appx. 214, 220 (5th Cir. 2012) (unpublished). Numerous courts have allowed plaintiffs to survive summary judgment where the plaintiff alleges only an increased risk of attack or serious psychological or emotional injury from such risk. <u>See</u>, <u>e.g.</u>, <u>Benefield</u>, 241 F.3d at 1271-72 (rejecting the government's argument that a prisoner's claim was subject to dismissal in the absence of physical injury); <u>Williams v. Thomas</u>, 2013 WL 1795578, at *6 (E.D.Pa. Apr. 29, 2013) ("district courts in this Third Circuit have found that there mere act of labeling a prisoner a snitch constitutes a substantial risk of harm").

More generally, both the Supreme Court and the Fourth Circuit have indicated that a prisoner can bring an Eighth Amendment claim to challenge harm that is certain or very likely in the future, even if the harm has not yet materialized. <u>See</u> <u>Helling v. McKinney</u>, 509 U.S. 25, 33 (1933) ( "That the Eighth Amendment protects against future harm to inmates is not a novel proposition... It would be odd to deny an injunction to inmates who plainly proved an unsafe, life-threatening condition in their prison on the ground that nothing yet had happened to them."); <u>Woodhous v. Com. of Va.</u>, 487 F.2d 889, 890 (4th Cir. 1973) ("A prisoner has a right, secured by the eighth and fourteenth amendments, to be reasonably protected from constant threat of violence and sexual assault by his fellow inmates, and he

need not wait until he is actually assaulted to obtain relief.").

Therefore, the undersigned concludes that a plaintiff may survive summary judgment by presenting evidence that he was exposed as a snitch and was attacked without having t conclusively prove that the exposure caused the attack. Likewise, a plaintiff could be entitled to injunctive relief to prevent an assault based upon being labeled a snitch. However, in the instant case, even though there is a dispute as to whether Defendant Bledsoe called the Plaintiff a "rat" and a "snitch," the Plaintiff has not alleged that he was physically assaulted as a result of that label. Moreover, even if the Plaintiff had alleged that he feared for his safety, he was transferred from Hazelton 30 days after he was allegedly labeled a snitch, and therefore, the risk of injury no longer exists. Accordingly, the undersigned concludes that the Plaintiff is not entitled to any relief as to this allegations.

Likewise, although the Plaintiff alleges that Defendant Bledsoe placed a knife in his cell so that his cell mate would kill him, it is clear that no attempt was made to harm the Plaintiff. In fact, the Plaintiff acknowledges that his cell mate swallowed pills and used the knife to cut his own wrists. Again, the Plaintiff was moved to another facility within 30 days of the alleged event, without incident, and is no longer exposed to Defendant Bledsoe. Accordingly, the undersigned concludes that the Plaintiff's allegations with respect to Defendant Bledsoe are due to be dismissed.

## **RECOMMENDATION**

In consideration of the foregoing, the undersigned **RECOMMENDS** that the Defendants' Motion to Dismiss or in the alternative, Motion for Summary Judgment (ECF

No. 58) be **GRANTED** and the Plaintiff's complaint be **DISMISSED WITH PREJUDICE** against C. Meyer because he has absolute immunity as a Commissioned Officer in the United States Public Health Service and against M. Bledsoe, M. Listen,  K. Pearce, and D. Harvischak for failure to state a claim upon which relief can be granted. In addition, the undersigned **RECOMMENDS** that the Plaintiff's complaint be **DISMISSED WITHOUT PREJUDICE** against Lt. Riffle for failure to exhaust administrative grievances. Finally, the undersigned **RECOMMENDS** that the Plaintiff's Request for Production of Docments [ECF No. 95] be **DENIED**.[6]

Within fourteen (14) days after being served with a copy of this recommendation, any party may file with the Clerk of the Court written objections identifying the portions of the recommendation to which objections are  made, and the basis for such objections.  A copy of such objections should also be submitted to the United States District Judge. Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985);  Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk of the Court is **DIRECTED** to mail a copy of this Report and Recommendation to the *pro se* plaintiff by certified mail, return receipt requested, to his last

---

[6]In the motion, the Plaintiff requests medical records for his cell mate, who he alleges cut his own writs with the razor purportedly planted to allow him to kill the Plaintiff.  In addition, he requests any video recordings of the Defendants who entered his cell and flushed his documents in the toilet. The Plaintiff has not been granted leave to engage in discovery. Moreover, as explained more fully in this Report and Recommendation, even if true, the Plaintiff's allegations do not entitle him to relief. Therefore, his discovery requests are moot.

known address as reflected on the docket sheet and to any counsel of record via electronic means.  In addition, because this Report and Recommendation completes the referral from the District Court, the Clerk is **DIRECTED** to terminate the Magistrate Judge association with this case.

      Dated: January 22, 2019

*/s James P. Mazzone*

JAMES P. MAZZONE
UNITED STATES MAGISTRATE JUDGE